IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| DEARIE CHEATHAM, | : Case No. 1:18-cv-295 |
| Plaintiff, | : Judge Matthew W. McFarland |
| v. | : |
| MEGAN BRENNAN, Postmaster General, United States Postal Service, | : |
| Defendant. | : |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 26)**

This case is before the Court on the motion for summary judgment filed by Defendant Megan Brennan, Postmaster General, United States Postal Service (USPS). (Doc. 26.) Plaintiff has filed a response in opposition (Doc. 39), to which USPS has filed a reply (Doc. 44), making this matter ripe for review.

**FACTS**

For more than 20 years, Plaintiff Dearie Cheatham was employed by USPS as a clerk at the Coryville Post Office. (Doc. 39-1.) In 2006, Plaintiff injured her foot in the course of her employment. In 2012, she requested and received FMLA leave to have surgery on her foot. The last time Plaintiff physically worked at the Coryville location was February 9, 2012. In October 2014, Plaintiff was offered—and accepted—modified, light-duty work at the USPS' Dayton Call Center, where she worked from December 2014 until November 2015 when she again requested and received FMLA leave related

to her foot. (*Id*.) Because Plaintiff scheduled her surgery before receiving approval from the Department of Labor (DOL), she was not being compensated beginning in February 2016. (Doc. 36-17.) She did, however, begin receiving Social Security Disability payments in May 2016, as well as pay from the Office of Worker's Compensation Programs from May 2, 2016 – June 24, 2016 and July 15, 2016 – July 30, 2016. (Doc. 36-22; Doc. 26-5 at p. 9, 28.)

Plaintiff was released to work by her physician on February 15, 2016, with the following restrictions: "[m]aximum of four hours of work daily, sit down ONLY through the entire shift, and patient has to wear a cam boot . . . can lift no more than 10 pounds when sitting only (not standing) when standing she should not be lifting, she should not be pushing or carrying anything because she should not be on her feet during her shift, she should be sit down duty only. She can pull only when sitting down as much as needed. She should not be squatting or kneeling, she should not be standing at all during her shift and she should be doing as minimum walking throughout her shift. While patient is at work she has to have her boot on at all times." (*Id*.)

Accordingly, Plaintiff spoke with Cliff Logan, the Manager of Health and Resource Management, about returning to work. (Doc. 39-1.) But unfortunately, there was no work available that fit her modifications. She was unable to return to the Dayton Call Center due to a previous settlement, and the manager of the Coryville Post Office, Jim Price, testified that there was no sedentary work available. (Doc. 26-4 at 76:17-18.) Regardless, on March 12, 2016, Logan sent a request for work search email, the first step in providing reasonable accommodations. (Doc. 36-6.) After Plaintiff's

2

DOL request was approved on April 6, 2016, Logan sent another request for work email on April 28. (Doc. 38-1.) Additionally, Evon Annette Clark, an HRM Specialist with USPS, sent another request to various managers on April 15, 2016. (Doc. 36-15.) On July 20, 2016, USPS certified that a search for reasonable accommodation had been made, but that "[r]eassignment is not possible. There are no vacant positions at this agency, at the same grade or pay level and tenure within the same commuting area, for which the employee meets minimum qualifications standards." (Doc. 36-16.)

USPS resumed its search for work no later than April 12, 2017, when Clark sent another email to Price requesting an additional work search. (Doc. 36-19.) At this point, Price became frustrated and emailed upper management, including Logan, and stated that Plaintiff "has not been at Coryville in years. She has not turned in documentation to [] Corryville . . . She has been receiving Social Security disability for a while . . . We need to get her off the rolls. We need to get her out of Corryville[']s stats and numbers." (Doc. 36-22.) Price admitted that he did not conduct the April 2017 search because he believed it was a fellow employee's responsibility. (Doc. 29 at 69:22-70:18.) Regardless, on June 12, 2017, Clark sent Logan another email requesting a work search. (Doc. 39-1 at ¶¶ 61-63.) And on July 21, 2017, Logan sent yet another email with the same request to various managers. (Doc. 36-21.)

On August 1, 2017, Plaintiff requested a Reasonable Accommodation meeting. (Doc. 1 at ¶ 19). USPS responded three weeks later and scheduled a meeting with the District Reasonable Accommodation Committee ("DRAC"), which occurred on September 19, 2017. (Doc. 39-1 at ¶ 45.) During the meeting, the committee requested

3

additional medical information, which Plaintiff provided on October 9, 2017. (*Id.* at ¶¶ 45-46.) On November 7, a second DRAC meeting was held. (Doc. 1 at ¶ 24.) Two days later, Logan sent another work search email to various managers. (Doc. 36-7.)

On November 20, 2017, USPS offered Plaintiff modified light-duty work that fit within her accommodations. (Doc. 1 at ¶ 26.) However, on November 28, Plaintiff's counsel notified USPS that Plaintiff was declining the offer and would instead retire. (Doc. 26-5 at p. 44.) In April 2018, Plaintiff filed the present lawsuit.

## LAW

Courts must grant summary judgment if the record "reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo,* 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). Once the movant has met its initial burden of showing that no genuine issue of material fact remains, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To do so, they must present "significant probative evidence. . . on which a reasonable jury could return a verdict" in their favor. *Chappell v. City of Cleveland,* 585 F.3d 901, 913 (6th Cir. 2009). The court "must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007). This requirement, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582

4

(6th Cir. 1992) (*citing Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

## ANALYSIS

USPS moves for summary judgment on all of Plaintiff's claims. In her response in opposition, Plaintiff abandoned some of the claims she originally brought. The following claims remain: **Count One** for race discrimination in violation of Title VII of the Civil Rights Act of 1964; **Count Two** for violation of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*; **Count Three** for violation of Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*; and **Count Five** for retaliation under the FMLA, Title VII, and the Rehabilitation Act. (Doc. 1.) The disposition of each of these claims is discussed below.

### I. Failure to Accommodate and Failure to Engage in the Interactive Process

Plaintiff alleges that "Defendant violated the Rehabilitation Act by failing to provide reasonable accommodation in a timely manner and by unreasonably delaying the process." (Doc. 39.) Although the Sixth Circuit has expressly held that courts must apply the direct evidence test to resolve failure to accommodate claims under the ADA, it has not ruled on whether this rule applies to failure to accommodate claims under the Rehabilitation Act. *See Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) ("Our court, sitting en banc, has explained that though the two statutes [ADA and RA] have many similarities, they are not identical."). However, under either test, Plaintiff bears the initial burden of establishing that an employer failed to accommodate a known disability.[1] And here, it is undisputed that on November 20, 2017, USPS

---

[1] *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) ("Under the 'direct-evidence framework,' once an ADA plaintiff establishes that an employer failed to accommodate a known disability . . ."); *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (The elements of a prima facie failure-

5

offered her modified light-duty work. But Plaintiff, through counsel, declined and informed USPS that she would instead be retiring. As such, she cannot establish a failure to accommodate claim when Defendant, in fact, provided her with an accommodation. *See, e.g., Gardner v. W. Kentucky Univ.*, No. 1:11-CV-79-DJH-LLK, 2015 WL 5299451, at *2 (W.D. Ky. Sept. 9, 2015), *aff'd* (July 5, 2016) ("any delay in providing the requested accommodations is irrelevant because Gardner admits that she ultimately received those accommodations.") (*citing Gerton v. Verizon S. Inc.*, 145 F. App'x 159, 169 (6th Cir. 2005)) (grant of summary judgment was appropriate when defendant "reasonably accommodated [plaintiff], even though the accommodation was not at the exact time of her request").

A separate claim, however, still remains – failure to engage in the interactive process. "Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020) (citations omitted). "From that point, both parties have a duty to participate in good faith." *Id.* (internal quotation omitted). "If the interactive process was triggered but not successfully resolved, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* (internal quotation omitted). "Examples of how a party may fail to engage in the process in good faith include causing unnecessary delays or obstructing the process, as well as failing to adequately

---

to-accommodate claim are: (1) Plaintiff is disabled; (2) Plaintiff is otherwise qualified for the position, with or without reasonable accommodation; (3) Defendant knew or had reason to know about Plaintiff's disability; (4) Plaintiff requested an accommodation; and (5) Defendant failed to provide the accommodation).

6

communicate or provide information during the process." *Brumley*, 909 F.3d at 840.

Plaintiff's failure to engage in the interactive process claim fails for various independent reasons. First, even if Plaintiff could raise a material dispute as to whether USPS engaged in the interactive process in good faith, USPS is entitled to summary judgment because Plaintiff has failed to demonstrate a vacant, funded position that was available at the time of her request. This flaw is dispositive. The Sixth Circuit has expressly held that "if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant—even if it also appears that the defendant failed to engage in good faith in the interactive process." *Willard v. Potter*, 264 F. App'x 485, 488 (6th Cir. 2008) (*quoting Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 234 (3d Cir. 2000)). This is because "[i]mplicit in the plaintiff's duty to demonstrate that the employer failed to provide the necessary accommodation . . . the plaintiff must [also] identify a vacant, funded position for which she was qualified, with or without accommodation, that existed at the time of her request for reassignment." *Id*. at 487. Plaintiff has failed to do so. The evidence demonstrates why: there were simply no vacant positions available. The only argument Plaintiff presents to the contrary is that the November 2017 offer proves that USPS could have placed her in that position earlier. But the fact that a position became available in November 2017 has no bearing on whether or not a position was available in March 2016, especially when the record demonstrates that there were none. Because she has failed to identify a vacant position that she was

7

qualified for, Plaintiff's claim fails, regardless of whether USPS engaged in the interactive process in good faith or not. *See id.* at 487-88. *See also, e.g., Boyte v. Wilkie,* 2019 WL 609652, at *3 (M.D. Tenn. Feb. 13, 2019).

Second, USPS did engage in the interactive process in good faith. It is undisputed that over the span of almost two years, Clifford Logan and Evon Clark were in regular contact with managers inquiring about available work that might fit Plaintiff's accommodations. Yet no such work existed. Plaintiff could not return to the Dayton Call Center due to a previous settlement and there was no other sedentary work available. In July 2016, USPS certified that a search had been conducted but that there simply were not any vacant positions that met Plaintiff's accommodations. And the law does not require USPS to create a new position in order to fit Plaintiff's accommodations. *See Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 730 (6th Cir. 2000) (*citing Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998)); *see also, e.g., Boyte v. Wilkie*, 2019 WL 609652, at *3 (M.D. Tenn. Feb. 13, 2019). Nevertheless, USPS, including Clifford Logan and Evon Clark, continued to search for work. And when a position that fit Plaintiff's accommodations finally became available, USPS offered it to her. Although the interactive process took longer than Plaintiff wanted, "an employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control." *Gerton*, 145 Fed.Appx. at 168.

Third, it is the employee's burden to "produce evidence demonstrating that any delay in her request for accommodation was unreasonable." *Id.* at 169. To do so,

8

Plaintiff relies almost exclusively on the assertion that USPS never actually conducted any searches, but the only evidence that supports this allegation is that Jim Price admitted that he did not conduct a search following the April 2017 work search request. Price stated that it was his belief that doing so was a co-worker's responsibility. Apart from Price's statements regarding the April 2017 work search request, Plaintiff fails to cite any evidence that suggests the searches were not conducted. The evidence, as described above, actually attests otherwise.

Fourth, if anyone is to blame for the breakdown of the interactive process, it is Plaintiff. Namely, on November 20, 2017, USPS offered Plaintiff modified work that fit her accommodations, but Plaintiff turned down the position and instead decided to retire. Here, when an employee resigns before completing negotiations over their accommodation, an employer cannot be found liable for disability discrimination. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (*citing Kleiber v. Honda of America Mfg., Inc.*, 420 F.Supp.2d 809 (S.D. Ohio 2006)); *see also, e.g., Gleed v. AT & T Mobility Servs., LLC*, 613 F. App'x 535, 539 (6th Cir. 2015); *McDaniel v. Wilkie*, No. 17CV91, 2019 WL 626547, at *5 (N.D. Ohio Feb. 14, 2019), *aff'd*, No. 19-3304, 2020 WL 1066007 (6th Cir. Jan. 31, 2020) ("When a plaintiff does not participate in this shared 'interactive process' in good faith, and resigns while the process is ongoing, an employer cannot be found liable of disability discrimination.").

Moreover, the Sixth Circuit recently held that "an employee's failure to provide requested medical documentation supporting an accommodation precludes a failure to accommodate claim." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812–13 (6th Cir.

9

2020). There is evidence here (albeit disputed evidence) that Plaintiff failed, on numerous occasions, to provide USPS with the requisite documentation. From the outset, Plaintiff scheduled her surgery before receiving approval from the DOL. This was the reason why she was on leave without pay (LWOP) status in the first place. And as of June 29, 2016, USPS did not have any updated medical files besides her physician's February 15, 2016 release to work with restrictions. (Doc. 36-17.) Although the Court will refrain from adjudicating this matter based solely on this evidence, it it does not assist Plaintiff's efforts to save her claim from summary judgment.

In sum, Plaintiff's failure to accommodate claim fails because USPS, in fact, accommodated Plaintiff's request. Although it took a long time for a position to become available, when one did, USPS offered it to her—but she turned it down. By doing so, Plaintiff is ultimately responsible for the breakdown of the interactive process.

## II. Discrimination Based on Race and Disability

The familiar *McDonnell-Douglas* framework applies to Plaintiff's remaining claims.[2] Under this three-step analysis, the plaintiff must first show a prima facie case of discrimination. If the plaintiff can do so, then the defendant must articulate a nondiscriminatory reason for its action. If the defendant does, then the plaintiff must "prove that the given reason is pretext for retaliation." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). The ultimate burden of persuasion, however, remains at

---

[2] *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing the analytical framework for discrimination claims under Title VII); *see also Blume v. Potter*, 289 F. App'x 99, 103 (6th Cir. 2008) (Rehabilitation Act); *Stokes v. Detroit Pub. Sch.*, 807 F. App'x 493, 499 (6th Cir. 2020) (Title VII); *LaBelle v. Cleveland Cliffs, Inc.*, 784 F. App'x 437, 443 (6th Cir. 2019) (FMLA); *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir.2007) (retaliation).

all times with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006).

To establish a prima facie case of disability discrimination under the Rehabilitation Act, Plaintiff must show that: (1) she is disabled, (2) she was otherwise qualified for the job, with or without reasonable accommodation, (3) she suffered an adverse employment action, (4) her employer knew or had reason to know of her disability, and (5) she was treated differently than similarly situated non-protected employees. *See Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007). Moreover, "the Rehabilitation Act requires that individuals show that the employer's actions were taken 'solely by reason of her or his disability.'" *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th Cir. 2020) (*quoting* 29 U.S.C. § 794(a)).

Although the Court has concerns that Plaintiff can sufficiently establish a prima facie case, her disability discrimination claim fails regardless. USPS has a legitimate, nondiscriminatory reason for each of its actions, which Plaintiff cannot rebut by demonstrating pretext. Plaintiff contends that USPS' delay in offering her accommodation constitutes as a material adverse employment action. However, if it does, the Rehabilitation Act has a heightened causation standard that only bars discrimination that occurs "solely by reason of" one's disability. *See Kaminsky v. Wilkie*, 2020 WL 3893521, at *7 (N.D. Ohio July 10, 2020) (*citing Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 315 (6th Cir. 2012)). Here, the delay was not caused "solely by reason of" Plaintiff's disability. The delay was caused by the fact that there were no available jobs that fit within Plaintiff's work restrictions. The restrictions required

11

Plaintiff to work only four hours a day, perform only sedentary work, lift no more than ten pounds, always wear a boot, always sit, and only walk at an absolute minimum. In this case, no such work existed except at the Dayton Call Center, where Plaintiff could not return due to the previous settlement she had reached. Not having any vacant positions available within Plaintiff's restrictions is a legitimate and nondiscriminatory reason for not providing Plaintiff with the work she requested. *See Figgins v. Advance Am. Cash Advance Centers Of MI, Inc.*, 476 F. Supp. 2d 675, 691 (E.D. Mich. 2007).

Since USPS has provided a legitimate and nondiscriminatory reason for its actions, it is entitled to summary judgment unless Plaintiff can rebut their explanation by demonstrating pretext. *See Bartlett v. Gates*, 421 Fed. Appx. 485, 488 (6th Cir. 2010). Pretext is generally established by showing that the stated reason for the employer's decision is "false" or "unworthy of credence." *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 135, 143 (2000); *see also Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n. 4 (6th Cir. 2009) ("At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation."). Plaintiffs usually demonstrate pretext by showing that an employer's stated reason for an adverse employment action either: (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *See Bartlett*, 421 Fed.Appx. at 490-91.

In this case, Plaintiff fails to do so. The only evidence Plaintiff argues is demonstrative of pretext is that (1) Price made excuses for not conducting the April 2017 search and (2), contrary to Defendant's assertion, her medical information was in

12

order. Here, even if Price failed to conduct the April 2017 search, and Plaintiff's medical information was in order, no reasonable juror could find that Defendant's legitimate nondiscriminatory reason was pretext. In July 2016, USPS affirmatively certified that searches were conducted, but that there were no positions available that fit within Plaintiff's accommodations. As such, Plaintiff has failed to demonstrate a vacant position for which she was qualified, likely for the same reason that USPS has proffered, namely, that none existed at that time. Regardless, Logan and Clark continued to search. They sent frequent search requests to several different managers, both before and after the April 2017 search request to Price. Most importantly, these searches eventually culminated in a job offer, which Plaintiff turned down.

Moreover, when asked if anyone at USPS ever said that she was denied a reasonable accommodation because of her disability, Plaintiff testified, "No." (Doc. 27 at 69:5-8.) When Plaintiff was asked if anyone at USPS ever said or made any derogatory comments about her disability, she responded, "No." (*Id.* at 68:10-13.) Based on these facts, no reasonable juror could find that Plaintiff was discriminated against because of her disability, especially when her employer offered her a position that fit within her accommodations, but she turned it down and instead decided to sue.

### III. Race Discrimination Under Title VII

Similarly, to establish a prima facie case of race discrimination, a plaintiff must show that: (1) they are a member of a protected class, (2) they were qualified for the job, (3) they suffered an adverse employment action, and (4) they were replaced by, or treated less favorably than, a person outside the protected class. *Wheat v. Fifth Third*

*Bank*, 785 F.3d 230, 237 (6th Cir. 2015). To eventually succeed on the claim, plaintiff must show that race was a motivating factor in the defendant's challenged employment decision. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020).

Here, Plaintiff's claim for discrimination based on race fails for similar reasons as discussed above. The only evidence Plaintiff suggests is demonstrative of pretext is the existence of a comparator, Becky Schneider. According to Plaintiff, Becky Schneider is white and disabled. Yet, when she requested reasonable accommodations, USPS provided them to her. But a comparable employee is required to be "similarly situated in all relevant respects." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). Here, Ms. Schneider and Plaintiff are not similarly situated. While Plaintiff's disability required that she do only sedentary work, Ms. Schneider's restrictions had nothing to do with sedentary work and allowed her to walk around during work. (Doc. 26-4 at 91:5-12.) This distinction is crucial because the reason for USPS' delay in accommodating Plaintiff was that there simply were no vacant sedentary jobs. When one became available, USPS offered it to her, just as they did Ms. Schneider. But unlike Ms. Schneider, Plaintiff declined the offer. In this case, Ms. Schneider and Plaintiff were clearly not similarly situated.

Apart from Ms. Schneider, Plaintiff fails to cite any evidence that would suggest that her race played any part in USPS' decision-making. Plaintiff testified that no one ever made any racist comments to her, nor did anyone ever say anything that would indicate USPS' actions occurred because of her race. (Doc. 26-2 at 64:8-65:2.) When

14

asked how her coworkers were, Plaintiff responded "Loved them. I didn't have a problem with co-workers, managers, supervisors. Respect. I respected them, they respected me." (*Id.* at 44:9-11.) Accordingly, USPS is also entitled to summary judgment on Count One.

## IV. Retaliation

Plaintiff also brings a retaliation claim under the Rehabilitation Act, Title VII, and the FMLA. This claim is analyzed using the same *McDonnell-Douglas* burden-shifting framework discussed above. *See Ford Motor*, 782 F.3d at 767. To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity under the applicable act, (2) USPS knew she availed herself of that right, (3) she suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381 (6th Cir. 2017) (FMLA); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (Title VII).

Plaintiff alleges that she was retaliated against for (1) requesting a reasonable accommodation under the Rehabilitation Act, (2) taking time off under the FMLA, and (3) filing the EEO complaint in this case, a protected activity under Title VII. (Doc. 1 at ¶ 44.) According to Plaintiff, USPS retaliated by refusing to offer her a reasonable accommodation and keeping her on LWOP status when she attempted to return to work. (*Id.*) This allegation is completely discredited by the fact that USPS offered Plaintiff a reasonable accommodation on November 20, 2017—a full two months *after*

15

Plaintiff filed her EEO complaint. If Plaintiff had accepted the offer, she would have been taken off LWOP status, but she turned the offer down, retired, and sued. Moreover, the reason that Plaintiff was on LWOP status in the first place was because she scheduled her surgery before receiving DOL approval. In her response in opposition, Plaintiff cites no evidence in support of this claim. Accordingly, even if the delay in Plaintiff's accommodation constitutes an adverse employment action, there is simply no causal connection between the delay and any of Plaintiff's alleged protected activities. This is because: (1) it was Plaintiff's fault that she was on LWOP status in the first place, and (2) when offered a reasonable accommodation that would have taken her off LWOP status, Plaintiff declined.

## CONCLUSION

For the reasons articulated above, Defendant USPS' motion for summary judgment (Doc. 26) is **GRANTED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _/s/ Matthew W. McFarland_
JUDGE MATTHEW W. McFARLAND